**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

     v.

GARY SWANSON,

        Defendant.

_____/

No. CR 06-0692 PJH

**FINAL PRETRIAL ORDER**

This matter came before the court for a pretrial conference on November 7 and 8, 2007.  At the hearings, the court ruled on pretrial motions, including motions in limine, as set forth below.

## GOVERNMENT'S MOTIONS

**1.    Motion to Exclude Certain Email**

The government's motion to exclude the email from Jae H. Park to Hynix employees is DENIED as moot, but the court will reserve ruling until trial on its admissibility for impeachment purposes.

**2.    Motion in Limine to Exclude Evidence from the ITC and DOC Investigations and Proceedings; 3. Related Motion in Limine to Exclude Testimony from Jerry Hausman; and 4. Related _Daubert_ Motion to Exclude Expert Testimony from Jerry Hausman and Harvey Applebaum**

The government has filed three related motions that seek to exclude the introduction of evidence from and expert testimony about the International Trade Commission's ("ITC") and the Department of Commerce's ("DOC") antidumping and duty investigations and related proceedings; that seek to exclude expert testimony from Jerry Hausman and Harvey Applebaum under _Daubert v. Merrell Dow Pharmaceuticals, Inc._,  509 U.S. 579,

593-94 (1993); and that seek to exclude expert testimony from Hausman on the issue of economic justification.  Because the motions overlap to a significant degree, the court addresses them together.

### a.    ITC/DOC Documentary Evidence

Previously, Swanson sought discovery of non-public materials related to the ITC and DOC proceedings.  The court denied the motion because Swanson could not show that the materials were within the control of the Department of Justice ("DOJ").  Swanson then propounded Rule 17(c) subpoenas on the DOC and ITC.  The parties entered into a stipulation regarding all of the materials sought by Swanson with the exception of the unredacted version of the ITC's determination,  the evidence supporting the ITC determination, and the unredacted version of the parties' briefs and material referenced in those briefs.  In a July 27, 2007 order, this court granted ITC's motion to quash with respect to those materials not covered by the parties' stipulation, concluding that Swanson was unable to demonstrate that the briefs and related materials, which presumably contained primarily third-party attorney argument, were admissible under the Federal Rules of Evidence ("FRE") 803(8)(c), 801(d)(2), or 803(3).

With respect to the evidence supporting the ITC determination, the court also held that Swanson had not demonstrated that the evidence was admissible.  It found that the supporting evidence presumably consisted of the testimony of other third parties, and therefore was not admissible under the public record or state-of-mind hearsay exceptions, nor did it constitute a party-opponent admission under FRE 801(d)(2).

Defendant did not request reconsideration of the court's rulings and he has not provided this court with any reason to revisit its prior rulings.  Accordingly, based on the prior rulings, the documents subject to the prior order will not be admitted at trial for the reasons stated in that order.  Additionally, as for that evidence and other ITC and DOC documentary evidence *not* covered by the court's July 27, 2007 order, the court concludes that the documents have marginal, if any, probative value, and pose a substantial risk of

United States District Court

For the Northern District of California

1   confusing and misleading the jury and of undue delay, and therefore excludes the evidence

2   under Rules 402 and 403.   Accordingly, the government's motion is GRANTED as to the

3   ITC/DOC documentary evidence.

4                    **b.    Expert Testimony**

5        At the outset, the court notes that it has at least six briefs, in addition to an expert

6   witness summary, regarding Hausman's proposed expert testimony, and at least four briefs

7   and an expert witness summary regarding Applebaum's proposed expert testimony.  In

8   spite of the stacks of briefs and two days of argument on the issue, the court remains at a

9   loss as to the defendant's position regarding the experts' testimony.  Defendant's position

10  regarding the purpose of their testimony is nothing short of a moving target, and is not

11  clearly articulated in *any* of his briefs.  Nevertheless, to the best of the court's ability, it has

12  boiled down the purposes for which Hausman's and Applebaum's expert testimony are

13  being offered into the following subject areas:  (1) to explain generally the ITC and DOC

14  proceedings; (2) to demonstrate bias and motive on Micron's, and, specifically, Mike

15  Sadler's part; (3) to demonstrate the existence of multiple conspiracies; (4) to offer

16  testimony regarding the DRAM industry generally and on the existence of competition in

17  the industry; and (5) to corroborate Swanson's testimony regarding the existence of a

18  supercompetitive environment.

19       The primary purposes for which Swanson has proffered Applebaum's expert

20  testimony –  to explain the procedures and administration of a typical ITC proceeding, the

21  time that it takes to prepare an ITC petition, and to "give his opinion that the ITC DRAM

22  proceeding initiated by Micron was typical and consistent with general ITC practice" – are,

23  for the reasons discussed exhaustively on the record, of marginal, if any, relevance, and

24  pose a substantial risk of confusing and misleading the jury and of undue delay.  The court

25  therefore excludes the evidence under Rules 402 and 403.  To the extent that it is

26  necessary to provide the jury with some basic foundation regarding ITC and/or DOC

27  proceedings, the information shall be introduced through a neutral source, and not through

28

3

United States District Court

For the Northern District of California

the defendant's witnesses.  The parties shall meet and confer and propose a stipulated instruction for the jury regarding the basic details of such proceedings.  Moreover, the government has agreed to stipulate that the ITC/DOC proceedings at issue conformed with ITC/DOC proceedings generally.  Accordingly, the government's motion to exclude expert testimony from Applebaum is GRANTED.  However, Applebaum may testify as a percipient witness as to impeachment evidence regarding Micron and its employees' motives and/or bias, and/or regarding the existence of multiple conspiracies.

Turning to Hausman, although Swanson has labeled Hausman as an expert, the court finds that he is actually being offered as a fact witness with respect to his retention by and relationship with Micron and/or Sadler in the ITC proceedings, the fact that Micron allegedly concealed information from him regarding its real motive and purpose in initiating the ITC proceedings, and regarding Micron's alleged multiple conspiracies targeting Hynix. Hausman's proffered testimony on these bases is not based on scientific, technical, or other specialized knowledge, and is therefore not admissible as *expert* testimony under FRE 702.  It also appears to the court that much of the above proffered non-expert testimony is actually hearsay.  However, like Applebaum, Hausman may testify as a percipient witness as to impeachment evidence regarding Micron and its employees' motives and/or bias, and/or regarding the existence of multiple conspiracies.

It appears that Swanson also seeks to present expert economic testimony from Hausman.  At the time that the government filed its motions in limine, it had not yet reviewed Swanson's summary of Hausman's proffered expert testimony.  It suspected that Swanson may seek to have Hausman testify that any pricefixing agreements were reasonable, fair, economically justified, and/or did not have an anticompetitive effect, which it contends that he may not do.  Swanson has since clarified that the government is incorrect, and that he will not be offering Hausman's testimony for these purposes. Nevertheless, as noted, defendant's briefs on the issue are far from clear, and present quite a moving target for the court.

4

United States District Court

For the Northern District of California

1    Evidence regarding economic justification, which includes evidence that pricefixing

2   was justified by "a failing economy, failing markets, failing companies, too many suppliers,

3   too few customers, 'unethical' business practices such as price cutting or untrustworthy

4   purchasing agents" is irrelevant to explain or justify a per se offense such as pricefixing.

5   ABA Section of Antitrust Law, Criminal Antitrust Litigation Handbook (2d ed. 2006), at 254;

6   *see also Northern Pac. Ry. v. United States*, 356 U.S. 1, 5 (1958) ("there are certain

7   agreements or practices which because of their pernicious effect on competition and lack of

8   any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal

9   without elaborate inquiry as to the precise harm they have caused or the business excuse

10  for their use"); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940); *United

11  States v. Alston*, 974 F.2d 1206, 1208 (9th Cir. 1992) (pricefixing is illegal regardless of any

12  competitive justifications defendant may offer).  Other justifications, such as "ruinous

13  competition, financial disaster, evils of price cutting and the like" are similarly irrelevant to

14  explain or justify a pricefixing charge.   ABA Section of Antitrust Law, Criminal Antitrust

15  Litigation Handbook (2d ed. 2006), at 255.  Accordingly, the court will NOT permit either

16  expert – *or lay* – witness testimony, including that from Hausman, to demonstrate economic

17  justification for or the reasonableness of any pricefixing agreements under Federal Rules of

18  Evidence 402 and 403.  To the extent that Swanson seeks to admit Hausman's testimony

19  for the purpose of corroborating his own testimony on any of these bases, neither Swanson

20  nor Hausman will be entitled to testify as to the "supercompetitive" environment for

21  purposes of justifying any agreements or decisions to fix prices.

22    The court notes, though, that "[e]conomic evidence may, however, be offered by the

23  defense in order to rebut the existence of the alleged conspiracy itself or tend to negate the

24  fact that [the alleged conspiracy] occurred."  *Id.; see also id.* at 309 ("[i]t should be noted

25  that the economic evidence in a per se case must be directed at showing the absence of a

26  conspiracy"); *Continental Baking Co. v. United States*, 281 F.2d 137 (6th Cir. 1960) (if

27  defendant denies entering into an illegal pricefixing agreement, he is permitted to present to

28

5

the jury his explanation of the factors that brought about similar prices).

To the extent that Swanson seeks to introduce expert testimony from Hausman on the above permissible basis, in its *Daubert* motion, the government has nevertheless argued that Hausman's expert testimony should be excluded because Swanson failed to disclose the documents that he relied on in carrying out his investigation of the DRAM market under Rule 16(B), and under *Daubert* because Hausman's opinions are not reliable because he has utilized unreliable economic data.  Regarding Rule 16, this court agrees with the district court's decision in *United States v. Reliant Energy Services*, that the "rudiments of disclosure" require a party seeking to offer an expert witness to disclose:

> 1) Any reports and analyses that the expert has prepared, concerning the facts of the case;
>
> 2) Copies or a specification of all documents, writings and other information reviewed by the expert or on which the expert's opinions are based, in sufficient detail so that the opinion rendered can be tested against that upon which it is based;
>
> 3) The expert's work papers; and
>
> 4) The expert's curriculum vitae or professional resume.

2007 WL 640839 at *2 (N.D. Cal. 2007) (citing Rule 16 Advisory Committee Note to the 1993 amendment).  In the event that he has not already done so and still wishes to introduce expert testimony from Hausman on the permissible grounds outlined above, Swanson is ORDERED to disclose the above documents to the government **no later than Wednesday, November 21, 2007.**  If Swanson fails to make the above disclosures, the court will exclude Hausman's expert testimony.  *See Taylor v. Illinois*, 484 U.S. 400, 415 (1985).

Assuming that Swanson complies with Rule 16 and this court's order, and if following review of the newly-disclosed information, the government still seeks to challenge Hausman's expert testimony under *Daubert*, the government may renew its *Daubert* motion with respect to Hausman ONLY by filing a renewed motion **no later than Monday, December 3, 2007.**  Swanson's opposition, if any, is due **no later than Monday,**

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  **December 10, 2007**.  The court will hear the renewed motion at  **9:00 a.m. on Monday,**

2  **December 17, 2007.**  In the event that the parties seek to introduce expert testimony at the

3  hearing regarding Hausman's qualifications and/or the reliability of his proffered expert

4  testimony, the parties' experts must be present at the December 17, 2007 hearing.

5       Finally, because Swanson asserts that he also intends to offer Hausman's and

6  Applebaum's testimony on the issue of the existence of multiple conspiracies, the court

7  notes that prior to giving a multiple conspiracies instruction, Swanson's multiple

8  conspiracies theory must be "supported by law and ha[ve] some foundation in the

9  evidence." *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir. 1985).   The proof at

10  trial must indicate that a jury could reasonably conclude that some of the defendants were

11  only involved in separate conspiracies unrelated to the overall conspiracy charged in the

12  indictment.  *United States v. Anguiano*, 873 F.2d 1314, 1317 (9th Cir. 1989).

13       "The test for whether a single conspiracy existed, as opposed to multiple

14  conspiracies is whether there was one overall agreement to perform various functions to

15  achieve the objectives of the conspiracy." *United States v. Otis*, 127 F.3d 829, 835 (9th Cir.

16  1997).  A single conspiracy may involve subgroups or subagreements.  *United States v.*

17  *Arbelaz*, 719 F.2d 4153, 1457 (9th Cir. 1983).  A single conspiracy may be identified by

18  examining characteristics including the nature of the scheme, identity of the participants,

19  nature and frequency of each conspirator's involvement, and commonality of time and

20  goals.  *Id.*  In determining whether one or more than one conspiracy is proven, the Ninth

21  Circuit has compared the differences in the period of time covered by the alleged

22  conspiracies, the places where the conspiracies were alleged to occur, the persons

23  charged as co-conspirators, the overt acts alleged to have been committed, and the

24  statutes alleged to have been violated.  *See id.*

25       For the above reasons, the government's motions to exclude evidence and expert

26  testimony regarding the ITC/DOC proceedings, and to exclude Hausman's and

27  Applebaum's expert testimony, are GRANTED IN PART AND DENIED IN PART.

28

**United States District Court**
For the Northern District of California

1

### 5.    Motion in Limine to Exclude SEC Filings

2      Swanson indicated that he intends to introduce nine Securities and Exchange

3 Commission ("SEC") filings from 2001 and 2002, including four quarterly reports and two

4 annual reports filed by Micron, and a current report, registration document, and annual

5 report filed by Infineon.  The government argues that the documents are hearsay and

6 irrelevant.  It contends that the documents contain the views of their respective filers on a

7 number of issues, including corporate finance and competition in the DRAM market.  The

8 government also asserts that the documents fail to shed any light on the existence of a

9 conspiracy to fix prices or on Swanson's participation in such a conspiracy.

10      Swanson contends that the SEC filings will corroborate his testimony regarding the

11 competitiveness of the market, and also serve as impeachment evidence to contradict the

12 government witnesses' testimony.  He further asserts that this court may judicially notice

13 the documents, and that they are not being offered for the truth of the matters contained

14 therein.

15      The parties have not provided the court with the relevant excerpts of all of the SEC

16 filings.  The government's declaration attaches a list of the exhibits along with what appears

17 to be blank title pages for the exhibits.  *See* Reichman Decl, at Exh. 2.  Swanson, by

18 contrast, has cited to several exhibits in his trial exhibit binders and has provided page

19 numbers for the relevant excerpts.  *See* Oppos. at 12.  Unfortunately, in most cases, the

20 pertinent pages do not exist in the binders provided to the court because the exhibits

21 themselves were too voluminous to include in the binders.  *See, e.g.,* Exhibits A33 at 24;

22 A48 at 26.  The only representative excerpts, as cited by Swanson, that this court has

23 available to it are from Infineon's Form 20-F Annual Report and its Form 6-K.  *See* Exhibits

24 A54 at 5; A56 at 5, 8.

25      This court's review of the documents suggests that, to the extent that he seeks to

26 corroborate his own testimony regarding the competitive nature of the DRAM industry,

27 Swanson *is* indeed offering the documents for the truth of the assertions contained therein.

28

1    Otherwise, the simple fact that the statements in the SEC filings were made is of little or no

2    relevance for corroboration purposes.  Because the relevant excerpts and/or statements

3    contained in the SEC exhibits available to this court appear to be being offered for their

4    truth, and also appear to be hearsay, the court will not admit the statements for

5    corroboration purposes unless and until Swanson can demonstrate that they are

6    nonhearsay or excepted from the hearsay rule.  Additionally, assuming that Swanson is

7    subsequently able to articulate a nonhearsay basis for admission of the excerpts, this

8    court's above ruling regarding the admissibility of economic evidence will apply to the SEC

9    filings as well.  The filings may not be admitted for the purpose of demonstrating economic

10   justification or to show the reasonableness of any pricefixing agreements, but may only be

11   admitted to rebut the existence of the alleged conspiracy itself.

12          However, the court will admit statements such as those contained in the relevant

13   excerpts for impeachment purposes, to the extent that the statements may appropriately be

14   attributed to a testifying government witness.

15          For these reasons, the government's motion to exclude the SEC filings is GRANTED

16   IN PART AND DENIED IN PART.

17          **4.      Motion to Use FRE 1006 Summaries**

18          The court GRANTS the government's unopposed motion to use such summaries.

19          **5.      Motion to Exclude Expert Testimony**

20          In what it has termed a *Daubert* motion, the government moves to exclude

21   Swanson's proffered experts Hausman and Applebaum, discussed above, in addition to

22   investigator Winston Krone, and Korean translator Kwang Park, on various bases, including

23   under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,  509 U.S. 579, 593-94 (1993).

24          **A.      Legal Standards**

25          Under Federal Rule of Evidence 702, "the trial judge must ensure that any and all

26   scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert*,  509

27   U.S. at 592-93.  The Supreme Court later clarified that this applies not only to scientific

28

9

**United States District Court**

For the Northern District of California

testimony, but to all expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999). In analyzing the reliability of an expert's testimony, this court considers: (1) whether the theory or technique can be or has been tested; (2) whether the technique has been subject to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) the general acceptance of the method within the relevant community. *Daubert*, 509 U.S. at 593-94.

The proponent of the evidence has the burden of satisfying *Daubert* and Rule 702. Mueller & Kirkpatrick, 3 Federal Evidence § 7:10 (2007 Suppl.). It is within the trial court's discretion whether a pretrial hearing is necessary. *See United States v. Alatorre*, 222 F.3d 1098, 1105 (9th Cir. 2000).

### B.    Kwang Park

Swanson has agreed to provide full translations of the documents at issue in the government's motion. Pursuant to this court's ruling on the record, Swanson is ORDERED to provide the government with those translations **no later than Wednesday, November 21, 2007.**

The government's motion regarding Park is DENIED as moot.

### C.    Winston Krone

Krone is a managing director of a computer investigations business, with computer forensics training. He recovered and reviewed emails sent or received by Swanson in conjunction with the DRAM investigation. Krone will testify based on his forensic investigation of Swanson's emails, that from February 4, 2002 until July 1, 2003, nearly forty-five per cent of Swanson's emails in his inbox were unread or unopened. He will testify similarly for the period June 29, 2001 through February 3, 2002.

The government contends that Krone's methodology is inherently unreliable and that his investigation was incomplete. It contends that computer users can readily alter the "read" or "unread" designation of an email, and that "no expert can reliably opine that a user

United States District Court
For the Northern District of California

1   did not read a particular email merely because the metadata states 'unread.'"

2       The government also questions the data Krone relied on, and notes that Krone relied

3   on data from limited periods during the conspiracy and on data from a period after the end

4   of the conspiracy to make broad assumptions and conclusions regarding the emails that

5   Swanson allegedly read and did not read.  It also notes that Krone failed to consider emails

6   from a relevant period during which the conspiracy is alleged to have taken place, from

7   April 1, 1999 to June 29, 2001.

8       In addition to the above *Daubert* issues, the government argues that Swanson

9   violated Rule 16(B) by failing to allow the government to inspect and copy the hard drive

10  reviewed by Krone and by failing to disclose Krone's subsequent results regarding his

11  investigation of additional emails provided to Swanson by the government, and that

12  Swanson should therefore be prohibited from introducing Krone's testimony.

13      As stated on the record, the court finds that Rule 16(B) requires Swanson to disclose

14  the hard drive and the other information requested by the government with respect to

15  Krone.  *See United States v. W.R. Grace*, 493 F.3d 1119, 1131-32 (9th Cir. 2007); *see also*

16  *Reliant Energy Serv., Inc.*, 2007 WL 640839 at *2.   Swanson has not provided a sufficient

17  explanation regarding his failure to comply with Rule 16(B) by the October 26, 2007

18  deadline.  Accordingly, this court ORDERED Swanson to disclose the hard drive and

19  information **no later than Wednesday, November 14, 2007**.  As stated on the record, if

20  Swanson fails to disclose the hard drive and information by that date, the court will exclude

21  Krone's testimony.  *See Taylor v. Illinois*, 484 U.S. 400, 415 (1985).

22      Assuming that Swanson complies with this court's order, and following the

23  government's investigation of the hard drive and additional information, the government

24  may renew its *Daubert* motion with respect to Krone ONLY by filing a renewed motion **no**

25  **later than Monday, December 3, 2007.**  Swanson's opposition, if any, is due **no later**

26  **than Monday, December 10, 2007**.  The court will hear the renewed motion at  **9:00 a.m.**

27  **on Monday, December 17, 2007.**  In the event that the parties seek to introduce expert

28

United States District Court

For the Northern District of California

1   testimony at the hearing regarding Krone's qualifications and/or the reliability of his

2   proffered expert testimony, the parties' experts must be present at the December 17, 2007

3   hearing.

**DEFENDANT'S MOTIONS**

4

5   **1.       Motion to Exclude Evidence that Swanson Participated in a Conspiracy**

6   **Prior to April 1, 2001, and to Exclude Evidence Related to an Alleged**

7   **Conspiracy Prior to April 1, 1999**

8           The indictment charges an overall conspiracy "from on or about April 1, 1999 until on

9   or about June 15, 2002."  The government filed a March 2, 2007 summary, which, pursuant

10  to the parties' stipulation, the court previously ordered would constitute a bill of particulars

11  pursuant to Federal Rule of Criminal Procedure 7(f).  Both the indictment and the March

12  2007 summary charge Swanson with joining in and participating in the conspiracy "from on

13  or about April 1, 2001, until on or about June 15, 2002."  The March 2007 summary

14  described events occurring "during the relevant period," which the summary defines as the

15  period "on or about April 1, 2001 to on or about June 15, 2002."

16          An amended summary filed by the government on October 10, 2007, also to

17  constitute a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f), contains

18  a section regarding "how the conspiracy began" that was not included in either the

19  indictment or the March 2007 summary.  That section references events occurring "as early

20  as 1998."  It also contains a section entitled "summary of evidence against Gary Swanson."

21  The October 2007 summary notes that Swanson's meetings and conversations with

22  competitors "started sometime in 1999 and continued through the relevant period."  The

23  October 2007 summary also notes that Swanson's awareness of other Hynix managers'

24  participation in the conspiracy and his direction to subordinate employees to fix prices

25  began "as early as 1998, continuing through the relevant period."  By contrast, the March

26  2007 summary simply stated that the above events occurred "during the relevant period"

27  (defined as April 1, 2001 - June 15, 2002).

28

United States District Court
For the Northern District of California

1   Swanson argues that the amended summary alters the dates on which he is alleged

2   to have joined the conspiracy, and also that it has changed the date that the overall

3   conspiracy began.  He argues that the amended summary therefore constitutes an

4   impermissible constructive amendment of the indictment, and also that the amendment is

5   contrary to the requirements of justice.  Swanson requests the court to exclude from trial:

6   (1) any evidence that Swanson participated in or joined the conspiracy beyond the period of

7   April 1, 2001 to June 15, 2002, as set out in the indictment and in the government's March

8   2007 summary; and (2) any evidence related to the alleged conspiracy by any person prior

9   to April 1, 1999, as set forth in the indictment.

10   In its trial brief and in opposition to Swanson's motion, the government argues that it

11   is seeking to introduce evidence that pre-dates the conspiracy period and that pre-dates

12   Swanson's participation in the conspiracy only to provide the jury with the full context of the

13   crime and to show how the conspiracy began.  *See Old Chief v. United States*, 519 U.S.

14   172, 189 (1997).  It argues that it is important that the jury hear the full story of the crime,

15   and that pre-conspiracy evidence that tells the "beginning" of the story constitutes non-Rule

16   404(b) "other act" evidence that is admissible because it is inextricably intertwined with the

17   charged conduct, and is therefore exempt from Rule 404(b)'s requirements.  It contends

18   that the evidence is necessary "to permit the prosecutor to offer a coherent and

19   comprehensible story regarding the commission of the crime" and to "explain either the

20   circumstances under which particular evidence was obtained or the events surrounding the

21   commission of the crime."  *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir.

22   1995).  Alternatively, the government argues the evidence is admissible under Rule 404(b)

23   as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of

24   mistake or accident.

25   The government further argues that the amended summary does not amount to a

26   constructive amendment to the indictment because it incorporates all of the terms of the

27   indictment by reference, and has not changed the time period during which Swanson was

28

13

United States District Court

For the Northern District of California

1   involved in the conspiracy.  It additionally asserts that the amended summary is not unfairly

2   prejudicial to Swanson, and contends that Swanson received all of the information

3   contained in the amended summary through discovery, including interview memoranda and

4   depositions produced to him nearly one year ago.

5       For the reasons stated on the record, the court concludes that the amended

6   summary does not constructively amend the indictment.  An amendment of the indictment

7   occurs when the charging terms of the indictment are altered, either literally or in effect, by

8   the prosecutor or a court after the grand jury has last passed upon them.  *United States v.*

9   *Adamson*, 291 F.3d 606, 614 (9th Cir. 2002).  A constructive amendment exists if "there is

10  a complex set of facts presented at trial distinctly different from those set forth in the

11  indictment," or if "the crime charged in the indictment was substantially altered at trial, so

12  that it was impossible to know whether the grand jury would have indicted for the crime

13  actually proved."  *United States v. Bhagat*, 436 F.3d 1140, 1145-46 (9th Cir. 2006).   The

14  mere fact that the government seeks to introduce evidence outside the time period charged

15  in the indictment does not in and of itself work a constructive amendment of the indictment,

16  particularly when the government has already assured Swanson and the court that it is not

17  seeking to alter the time period(s) charged in the indictment.  *See, e.g., United States v.*

18  *Cusimano*, 148 F.3d 824, 828-29 (7th Cir. 1998) (rejecting argument of coconspirator

19  defendants, who were charged in drug conspiracy, that admission of evidence of the

20  defendants' relationship and conduct dating prior to the conspiracy charged in the

21  indictment worked a constructive amendment of indictment, and noting that "the

22  introduction of evidence of pre-conspiratorial events does not by itself create a constructive

23  amendment of the indictment").

24      The court also determined that the "background" evidence is admissible as evidence

25  that is excepted from Rule 404(b) because it is "inextricably intertwined" with the charged

26  offense and necessary for the government to present a coherent and comprehensible story

27  regarding the alleged pricefixing conspiracy.  *See United States v. Beckman,* 298 F.3d 788,

28

14

United States District Court

For the Northern District of California

794 (9th Cir. 2002); *see also United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004); *Vizcarra-Martinez*, 66 F.3d at 1012.  Alternatively, the court concludes that the evidence may be admissible under Rule 404(b) to show preparation, opportunity, intent, and motive, depending on the particular piece of evidence and the purpose for which it may be proffered.  *See United States v. Portac*, 869 F.2d 1288, 1297 (9th Cir. 1989).

The court will, however, give the jury appropriate limiting instruction(s), advising it that the evidence may not be used to determine whether or not Swanson committed the charged offense.  *See United States v. Hooten*, 662 F.2d 628, 635 (9th Cir. 1981).

Having ruled on the admissibility and amendment issues, the court heard Swanson's motion for a continuance on November 8, 2007.  Swanson argued in his motion in limine and in his November 7, 2007 request for a continuance of the November 26, 2007 trial date, that he was unfairly prejudiced by the amended summary because he focused his preparation exclusively on the period from April 1, 2001 to June 15, 2002, the period that the indictment alleges he participated in the conspiracy.  However, as the court noted on the record, even though Swanson is not alleged to have joined the conspiracy until April 1, 2001, established law provides that he is bound by what preceded him.  *See U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 393 (1948) (statements made by conspirators during the conspiracy, but prior to the defendant's joining the conspiracy, are admissible because latecomers to a conspiracy assume the risk and responsibility for what has already happened).  Thus, in preparing for trial, Swanson appears to have inappropriately narrowed his review of the evidence to begin at the time when he was alleged to have joined the conspiracy on April 1, 2001, when instead, at a minimum, he should have focused on evidence throughout the alleged life of the conspiracy, from April 1, 1999 until on or about June 15, 2002.

The court noted that in considering whether Swanson was entitled to a continuance, the issue more appropriately concerned the introduction of evidence regarding events prior to April 1, 1999, the date when the conspiracy was alleged to have begun.  It is clear to the

**United States District Court**
For the Northern District of California

1   court that the amended summary references events prior to this date, while the indictment

2   and March 2007 summary do not.  It is also clear that Swanson did indeed receive

3   discovery from the government nearly a year ago, including interview memoranda, that

4   referenced pre-1999 events, as described by the amended summary.  Swanson concedes

5   that this is the case, but notes that in setting parameters for reviewing the voluminous

6   discovery in this case, defense counsel limited their review to the period from April 2001

7   through June 2002.

8         Because defense counsel has not focused on evidence prior to April 1999 (or April

9   2001, for that matter), it is evident that Swanson will be prejudiced in his ability to fairly

10  defend against any inculpatory "background" evidence.  *See United States v. Espericueta-*

11  *Reyes*, 631 F.2d 616, 623 (9th Cir. 1980).  Swanson has made a sufficient showing as to

12  his inability to overcome any potential prejudicial effect both in his counsel's declaration

13  and in his motion in limine.  *Id.*  Given the size of this case and the volume of discovery, the

14  court is concerned about what appears to be late notice on the government's part regarding

15  its intent to introduce the pre-April 1999 background evidence.  However, it does not find

16  that the government has violated any court orders, rules, statutes, or otherwise in

17  amending its summary.  Thus, the court has concluded that a continuance, as opposed to

18  exclusion of the evidence, is the appropriate remedy.  *See United States v. Gatto*, 763 F.2d

19  1040 (9th Cir. 1985); *United States v. Schwartz*, 857 F.2d 655 (9th Cir. 1988).

20        Accordingly, the court DENIES Swanson's motion to exclude the evidence, but

21  GRANTS his motion for a continuance.  The trial is continued to **Monday, February 4,**

22  **2008.**  More specific details and deadlines follow in this order.

23        **2.       Motion to Exclude Evidence re: (1) Auction Bidrigging; (2) non-DRAM**

24                 **products; and (3) DRAM buyers other than the OEMs named in the**

25                 **Indictment**

26        Swanson asserts that a number of documents included on the government's exhibit

27  list refer to memory products that are *not* DRAM products, such as hard disk drive

28

                                        16

United States District Court

For the Northern District of California

1   products, as well as sales to buyers other than the OEMs listed in the indictment.  Swanson

2   argues that evidence regarding non-DRAM products and other OEMs would substantially

3   prejudice his defense and should be excluded.

4        Swanson also asserts that several of the government's exhibits reference bidrigging

5   auctions, and he seeks to have any such references excluded, arguing that it will be unduly

6   prejudicial for the jury to hear evidence regarding bidrigging at auctions in the instant

7   pricefixing case because it is necessary to separate out unrelated conspiracies from that

8   charged against him.

9        As stated on the record, the court DENIES Swanson's motion to exclude the

10  bidrigging references given language in the indictment specifically referencing bidrigging.

11  Additionally, bidrigging may itself be part of a pricefixing conspiracy, and is not necessarily

12  an "offspring" or "separate" conspiracy as argued by Swanson.  *See* ABA Section of

13  Antitrust Law, Antitrust Law Developments (6th ed. 2006), at 88 & n. 489 (noting that

14  "[c]ourts repeatedly have held that conspiracies to submit noncompetitive rigged bids are a

15  species of price fixing and thus constitute per se violations of Section 1" and listing cases).

16       As for the non-DRAM and other-OEM evidence, the government has agreed not to

17  proffer six of the seven exhibits challenged by Swanson.  As for the remaining exhibit, the

18  court GRANTS Swanson's motion to exclude the email under FRE 403 because its

19  probative value is outweighed by the danger of undue consumption of time, prejudice, and

20  the likelihood of confusion.  The court, however, declines to issue a blanket ruling as to all

21  non-DRAM and other-OEM evidence, although future rulings will probably be similar to that

22  with respect to the exhibit already considered.

23       The court further rejects the government's argument that emails, such as that at

24  issue in this motion, constitute non-hearsay business records under FRE 803(6).  In the

25  Ninth Circuit, a business record is admissible when (1) it is made or based on information

26  transmitted by a person with knowledge at or near the time of the transaction; (2) in the

27  ordinary course of business; and (3) is trustworthy, with neither the source of information

28

nor method or circumstances of preparation indicating a lack of trustworthiness. *United States v. Bonallo,* 858 F.2d 1427, 1435 (9th Cir.1988).  In *Monotype Corp. PLC v. International Typeface Corp.*, 43 F.3d 443 (9th Cir. 1994), the Ninth Circuit held that an email message from an employee to his employer was not admissible under Rule 803(6) because an "ongoing electronic message and retrieval system," was not a sufficiently systematic business activity to justify the message's admission.  The court finds that emails such as this one are not sufficiently trustworthy to be admissible under Rule 803(6).

Moreover, the court also finds that emails such as the one at issue in this motion would not typically constitute present sense impressions under FRE 803(1). There are three requirements for a statement to qualify as a present sense impression under Rule 803(1): (1) The declarant must have personally perceived the event described; (2) the declaration must be a simple explanation or description of the event; and (3) the declaration and the event described must be contemporaneous. *See* 5 Weinstein's on Evidence, Hearsay Exceptions, § 803.03 [1].  The court is concerned that many of the emails included as exhibits to the parties' pretrial papers are interpretive rather than descriptive.  Unless the above requirements are satisfied, the court will not admit the email(s) under FRE 803(1).

For these reasons, Swanson's motion is GRANTED IN PART AND DENIED IN PART.

## RELATED MOTIONS OF BOTH PARTIES

### 1.     Motions in Limine re: Admissibility of Plea Agreements

For the reasons set forth on the record, testimony regarding individual and corporate plea agreements and the amnesty agreement, and the agreements themselves, are admissible.  The court sees no reason to exclude the Infineon plea agreement; and, in the event that Infineon employee Dennis Lee testifies, finds that the Ninth Circuit's reasoning in *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir.1981), and *Portac*, 869 F.2d at 1296, is equally applicable to the Infineon agreement.

The government is permitted to reference the existence of the plea agreements

during its opening argument, but may not reference the truthfulness provision

of the plea agreements until the credibility of a witness testifying pursuant to a plea and/or

amnesty agreement has first been attacked by the defense.  *See United States v.*

*Necoechea*, 986 F.2d 1273, 1278 (9th Cir. 1993)*; but see also United States v. Monroe*,

943 F.2d 1007, 1014 (9th Cir. 1991) ("[w]e have made clear that references to

requirements of truthfulness in plea bargains do not constitute vouching when the

references are in response to attacks on the witness' credibility").  Accordingly, to the

extent that the government seeks to publish to the jury any of the plea and/or amnesty

agreements prior to a challenge to that witness' credibility, the truthfulness provision

contained in the respective plea agreement must first be redacted.

Additionally, the court will give the jury a limiting instruction providing that it is not to

consider the evidence with respect to the defendant's guilt at the time the evidence of the

plea agreement is admitted and again in final instructions.  *Halbert*, 640 F.2d at 1006.

Finally, information regarding fines and penalties must be redacted from the

corporate plea and/or amnesty agreements.

For these reasons and those stated on the record, the government's motion is

GRANTED IN PART AND DENIED IN PART, and defendant's motion is GRANTED IN

PART AND DENIED IN PART.

### 2.    Hynix Sentencing Memo

In the parties' pretrial statement, defendant has requested an explanation from the

government regarding language contained in Hynix's sentencing memo.  However,

defendant is unclear as to what form this further clarification or explanation should take,

and has not provided any authority compelling the government to provide him with such

explanation.  The sentencing memo, which is akin to a brief that contains parties'

arguments, is itself not admissible.  Because it not clear to the court what relief, if any,

Swanson seeks, the request is DENIED.

////

19

**3.      Co-Conspirator Statements**

This issue will be resolved by separate order.

**JURY INSTRUCTIONS**

The court provided the parties with a tentative ruling on the proposed jury instructions submitted at the time of the November 7, 2007 pretrial conference as follows.

The court will **give** the following instructions **with no further modifications**:

- Govt. 1, Presumption of Innocence
- Govt. 3, Essential Elements of Sherman Act
- Govt. 7, Ignorance of Antitrust Laws No Defense
- Govt. 9, Sherman Act Conspiracy - Proof of Overt Act Unnecessary
- Govt. 10, Conspiracy- Knowing of and Association with Other Coconspirators
- Govt. 11, Conspiracy- Liability of Superiors

The court **declines** to give the following instructions:

- Def. 1, Presumption of Innocence
- Def. 2, 3, 4, 5, 6, and 7 (relating to plea agreements)
- Def. 8, Conspiracy- Elements
- Def. 9, Multiple Conspiracies
- Govt. 6, Knowingly Defined
- Def. 10, Proof that Defendant Knowingly Joined and Participated in an Alleged Conspiracy
- Def. 11, Conspiracy- Liability of Superiors
- Def. 13, Consideration of Circumstantial Evidence
- Def. 14, Source of Information
- Def. 15, Parallel Conduct
- Def. 16, Acting on Competitive Information
- Def. 17, Publicly Available Information

The court ORDERS the parties to meet and confer regarding the following

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

instructions.  In terms of the plea agreement instructions, the court finds the government's proposed instruction number 2 to be more streamlined and accurate than defendant's related instructions 2-7.  The court will give the government's proposed instruction, but the instruction must be modified to include language regarding witness benefits, as proffered by Swanson, and also to eliminate reference to the truthfulness provisions of the plea agreements, to the extent the instruction will be used prior to any attack on the witness' credibility.  The parties shall draft two versions of this instruction, one to be utilized prior to any credibility challenge, and one that may appropriately be used once the witness(es)' credibility has already been attacked.

• Govt. 4, Pricefixing Per Se Illegal.  The parties shall meet and confer regarding additional language from the ABA Model Instruction No. 54 that should be included in the proffered instruction.

• Definition of Knowingly.  The parties shall meet and confer regarding an instruction that properly defines "knowingly."  The government's proffered instruction, based on the Ninth Circuit model instructions, has not been tailored for an antitrust case. Swanson's instruction is confusing, and inaccurate in places.

The court advises the parties that they may wish to consult the ABA Section of Antitrust Law, Criminal Antitrust Litigation Handbook (2d ed. 2006), at 407 for guidance.

• Def. 12, Statute of Limitations- Conspiracy.  The parties shall meet and confer regarding elimination of the last paragraph of this proffered instruction.

Additionally, the court notes that the government's proffered instruction, no. 5, Sherman Act Mens Rea, is not available to the court.  The edition of the Federal Jury Practice and Instructions treatise on which the government relies (4th ed.) has since been updated.  The government is ORDERED to provide Swanson and the court with a copy of the model instruction on which this proffered instruction is based.

The court will take under submission the government's proffered instruction no. 8, Deliberate Ignorance, and advise the parties of its ruling regarding this instruction no later

21

**United States District Court**
For the Northern District of California

1  than the January 16, 2008 pretrial conference.

2  The parties shall revise the instructions as directed for submission along with any

3  new joint instructions required by this order and any limiting instructions required by this

4  order **no later than December 10, 2007.**  Additionally, the stipulation/instruction describing

5  the ITC/DOC proceedings shall be submitted by the same date.

6  <u>**OTHER PRETRIAL RULINGS AND INSTRUCTIONS**</u>

7  **a.**   **Trial Date:**  Jury trial will begin on **February 4, 2008**, at 8:30 a.m., in

8  Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, California.  The

9  anticipated length of trial is **12** days.

10  **b.**   **Subsequent Pretrial Conference:**  A subsequent pretrial conference will be

11  held on **January 16, 2008**, at 1:30 p.m., in Courtroom 3, 17th Floor.  The attorneys who will

12  try the case shall attend the conference.

13  **c.**   **Narrow Purpose for Continuance/ No Further Pretrial Motions in Limine:**

14  As stated on the record on November 8, 2007, the continuance granted to Swanson

15  is for the sole purpose of allowing him to effectively prepare for trial with respect to the pre-

16  April 1999 background evidence.  The parties will NOT be allowed to expand the case

17  beyond that presented in conjunction with the November 7 and 8, 2007 pretrial

18  proceedings.  Additionally, the court will not hear any additional pretrial motions at the

19  January 16, 2008 pretrial conference.  The record may only be supplemented by a revised

20  witness and/or exhibit list required by defendant's review of the pre-1999 evidence provided

21  by the government.

22  **d.**   **Amendments to Exhibit/Witness Lists:** The parties may file and serve

23  amended exhibit and witness lists **no later than January 9, 2008.**

24  ////

25  ////

26  ////

27  ////

28

**e.** **Jury Selection:** Jury selection will take place on the first day of trial, February 4, 2008.

**IT IS SO ORDERED.**

Dated: November 16, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court

For the Northern District of California

23