UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

GARY SWANSON,

        Defendant.

_____/

No. CR 06-0692 PJH

**THIRD ADDENDUM TO FINAL PRETRIAL ORDER**

Following the pretrial conference held November 7 and 8, 2007, the court continued the trial date to February 4, 2008, and set an additional pretrial conference for January 16, 2008. At the January 16, 2008 conference, the court ruled on outstanding pretrial matters as follows.

**A.    Coconspirator Statements**

    **1.    Background/Parties Arguments**

At the pretrial conference on November 7 and 8, 2007, the court advised the parties that it found the government's position regarding the procedure for introducing coconspirator statements under Federal Rule of Evidence ("FRE") 801(d)(2)(E) unclear, and ordered the parties to submit supplemental briefs on the issue. After reviewing the supplemental briefs, the court issued an order on November 16, 2007, which described alternatives that it was considering and set a further hearing on the issue. That hearing took place on Wednesday, November 28, 2007. As memorialized by this court's November 30, 2007 order, the court concluded that it would utilize a "middle road" approach regarding introduction and admission of the government's proffered coconspirator statements, by which it would preview prior to trial a summary of the coconspirator statements to be offered by the government. Following this preview, the court anticipated that it would be able to determine which statements the government would be permitted to introduce.

Accordingly, the court ordered the government to file and serve a summary of each witness' testimony and the coconspirator statements to be offered by that witness, and to attach to the witness' summary all emails to be introduced via that witness, and to highlight the coconspirator statements contained in the emails. The court permitted the defendant to file objections, and the government to file a reply.

Having reviewed the parties' filings, and as stated on the record at the January 16, 2008 conference, the court finds that the government's most recent filings do not enable it to rule on the introduction of each of the proffered coconspirator statements in advance of trial, as it had anticipated, because the government appears to have attempted to enlarge both the scope of the conspiracy and the participants involved in the conspiracy, and because the court is unable to ascertain from the government's papers the identity of the declarants and the precise coconspirator statements that the government seeks to introduce.

Significantly, in its most recent filings, the government included coconspirator statements dating back to December 31, 1997, and represented that the conspiracy existed at least as early as January 1998. The government also identified an additional four corporate coconspirators, and at least eighty additional individual coconspirators beyond those named in its October 2007 pretrial papers. The government further suggested in its papers that it *may be* taking the position that the conspiracy alleged for Federal Rule of Evidence 801(d)(2)(E) purposes differed from the conspiracy charged in the indictment.

The court queried the government regarding the above issues on the record. In terms of the scope of the conspiracy, the government stated that it was *not* taking the position that multiple conspiracies existed, and clarified that the single conspiracy charged was the same conspiracy as the one that it contends exists for Rule 801 purposes. The government asserted that the single conspiracy existed from at least as early as 1998 through June 2002. It claimed that it had simply chosen not to charge the entire period in the indictment.

As for the identity of the coconspirators, the government clarified that it had intended to disclose four corporate coconspirators in addition to the five previously disclosed. The corporate coconspirators named by the government include: Elpida Memory Inc., Hitachi Ltd., Hynix Semiconductor Inc. and its U.S. subsidiary Hynix Semiconductor America, Inc., Infineon Technologies AG and its U.S. subsidiary Infineon Technologies North America Corp., LG (before it merged with Hyundai to become Hynix), Micron Technology Inc., Mitsubishi Electric Corporation and its U.S. subsidiary Mitsubishi Electric & Electronics USA Inc., NEC Electronics Corporation and its U.S. subsidiary NEC Electronics America, Inc., Samsung Electronics Company, Ltd. and its U.S. subsidiary Samsung Semiconductor Inc., and Toshiba Corporation and its U.S. subsidiary Toshiba America Electronics Components, Inc.

Additionally, the government has now disclosed a total of ninety-four individual coconspirators, who are employees or former employees of the above-named corporate coconspirators. Although it disclosed ninety-four alleged individual coconspirators, the government intends to introduce *all* coconspirator statements through fourteen previously identified witnesses. In its latest filing, the government submitted witness summaries for these fourteen individuals. They include: Charles Byrd (Hynix); C.K. Chung (Hynix); Ken Heller (Hynix); Yeongho Kang (Samsung); D.S. Kim (Hynix); Dennis Lee (Infineon); Jay McBroom (Hynix); Jon Ostberg (Micron); Paul Palonsky (Hynix); Mike Peterson (Hynix); Mike Sadler (Micron); K.C. Suh (Hynix); Steve Thorsen (Micron); and Keith Weinstock (Micron). Each witness summary explains who the witness is and summarizes the categories and types of coconspirator statements to be introduced through that witness. Each summary also includes a brief list and description of the specific emails containing coconspirator statements to be introduced by that witness.

Although the government has highlighted the portions of each email it seeks to introduce via the fourteen witnesses for whom summaries have been provided, in many cases, the precise coconspirator statement is not obvious. Nor is the declarant's identity

3

apparent; and the witness introducing the emails, although often the recipient and/or author of the proffered emails, is, in many cases, *not* the declarant.

At the hearing, the court queried the government first regarding how it intended to demonstrate by a preponderance of the evidence that the four most recently-named corporate coconspirators, which include Hitachi, Mitsubishi, NEC Electronics, and Toshiba, who have not entered guilty pleas, were indeed members of the conspiracy. In response, the government noted that two of the four corporate coconspirators, Hitachi and NEC, merged to form Elpida in 2001, one of the previously-disclosed corporate coconspirators that has already entered a guilty plea. The government further noted that the actual coconspirator statements would come not from the corporate entities themselves, but from the alleged individual coconspirator employees.

Turning to the individual coconspirators, the court subsequently inquired how the government intended to demonstrate by a preponderance of the evidence that the individual declarants, who have not already pled guilty and/or will not testify at trial (particularly those for whom the government had not submitted a witness summary), were members of the conspiracy. Many of the alleged coconspirators in this category are referred to by defendant as the "salesmen." The parties agreed on the record at the January 16, 2008 conference that the testifying salesman include: Charles Byrd (Hynix), Ken Heller (Hynix), Jay McBroom (Hynix), Paul Palonsky (Hynix), Michael Peterson (Hynix), Dennis Lee (Infineon), Jon Ostberg (Micron), and Keith Weinstock (Micron). However, based on the emails and other filings submitted by the government, it appears to the court that there may be additional non-testifying "salesmen," that were not identified as such on the record, e.g., Joaquin Soucheiron (Infineon). *See, e.g.,* Summary of Dennis Lee & Exh. 222.

Defendant objects to introduction of coconspirator statements from "salesmen," both testifying and non-testifying "salesmen," contending that the government is unable to demonstrate their knowing participation in the conspiracy by a preponderance of the

evidence. He concedes that the same type of problem does not exist with respect to many of the superiors or mid-level managers, who have already pled guilty or are subject to their employer's amnesty agreement. The parties agreed that C.K. Chung (Hynix), D.S. Kim (Hynix), K.C. Suh (Hynix), Michael Sadler (Micron), Steve Thorsen (Micron), and Yeongho Kang (Samsung) fall into this category.

As for the testifying witnesses (including the "salesmen") who have not pled guilty, the government noted that it has already provided witness summaries, and that although the witness may not explicitly admit to illegal pricefixing, the witness will admit to conduct that demonstrates knowing participation in the conspiracy. As for non-testifying declarants, the government responded that it intended to elicit testimony from testifying witnesses that would demonstrate the declarant's membership and participation in the conspiracy.

**2.     Court's Ruling re: Scope, Timing, Participants, and Future Procedure**

As noted on the record, the court finds that the government has not sufficiently pinpointed the coconspirator statements, nor identified the declarants in a manner that enables it to rule on the introduction of the statements at this time. The court rules on the specific issues raised by the parties in conjunction with the latest filings and sets forth a procedure for future consideration and introduction of the coconspirator statements as follows.

In terms of the scope of the conspiracy, previously, this court ruled in the government's favor that the pre-April 1999 evidence constituted non-Rule 404(b) evidence, admissible in order to allow the government to present a complete story for the jury, and because the evidence was inextricably intertwined with the charged conduct; or alternatively, admissible under Rule 404(b) as proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident. The court also accepted the government's related representation that it was not constructively amending the indictment in seeking admission of pre-April 1999 evidence because it *was not changing the time period for which Swanson was charged with conspiracy to fix prices*.

The court ruled that the pre-April 1999 evidence would be permitted for the limited purposes set forth above, subject to an appropriate limiting instruction advising the jury that the evidence may not be used to determine whether or not Swanson committed the charged offense. *See United States v. Hooten*, 662 F.2d 628, 635 (9th Cir. 1981)*.*

The government now argues that the pre-April 1999 evidence should be allowed in as coconspirator statements*,* in other words, as substantive evidence of Swanson's guilt that would not be subject to a limiting instruction. As stated on the record, the problem is one of notice. In its original pretrial papers, the government did not advance the grounds that it now advances for admission of pre-1999 evidence. Moreover, the court's ruling was clear that the evidence would be admitted only for a limited purpose. Given the volume of discovery, the number of witnesses and exhibits, and the need for adequate time for trial preparation, it is simply too late for the government to change its position.

Accordingly, pre-April 1999 evidence will not be admitted for purposes other than those previously set forth in the court's November 16, 2008 final pretrial order. The pre-April 1999 evidence will not be allowed in as coconspirator statements under Rule 801(d)(2)(E). Pre-April 1999 evidence will be admitted only with a limiting instruction, and assuming that the government can establish a basis for its admissibility. Additionally, the government will not be permitted to introduce pre-April 1999 emails that purportedly contain coconspirator statements under the guise of "background evidence."

Turning to the witnesses and declarants, the court rejects defendant's argument that an alleged coconspirator must have been charged, pled guilty, or must explicitly admit to illegal pricefixing in order to be considered a coconspirator. The court makes no findings at this time, though, as to whether the government has established by a preponderance of the evidence that a particular declarant and/or witness qualifies as an unindicted coconspirator. However, the court notes that it will be more difficult for the government to establish the factual predicate for introduction of a non-pleading individual coconspirator's statement where that individual's employer also *did not* enter a guilty plea (e.g., an employee of

Mitsubishi or Toshiba).

Because the court finds that the government has not sufficiently identified the declarant and coconspirator statements, nor has it presented the evidence that establishes that the declarant was a member of the conspiracy, it sets forth the following procedure for trial.

No later than 4:00 p.m. on the business day prior to calling the witness(es) at trial, the government must provide to the defendant and deliver **to chambers** two copies of a chart and any related materials delineating:

(1) the identity of the testifying witness;

(2) a statement describing the witness;

(3) a summary of the evidence showing that the witness knew about and participated in the conspiracy;

(4) the emails to be introduced via that witness, identifying within the email the *specific* coconspirator statements to be introduced via that witness;

(5) the identity of the declarant of *each* specific coconspirator statement; and

(6) a summary of the evidence showing that *each* declarant of the coconspirator statement(s) knew about and participated in the conspiracy.

### 3. Publication During Opening Statements

The government may not refer to any pre-April 1999 evidence in its opening statement to the jury. Additionally, the only coconspirator statements that the government may refer to in its opening statement include those from coconspirator managers, as set forth on the record at the hearing, who have already pled guilty, or are subject to their employer's amnesty agreement. The government is prohibited from referring to the statements of any other coconspirators, including those of the testifying "salesmen" as set forth above, and also those of any non-testifying "salesmen" who were not specifically identified on the record.

### 4. Witness Summaries

The court DENIES defendant's request to limit witness testimony to the actual statements contained in the witness summaries submitted by the government. The witness summaries are simply summaries, not verbatim accounts. However, the subject area(s) about which the witness may testify are limited to those covered by the summaries.

### 5. Admissibility of Context of Emails Containing Coconspirator Statements

Because the admissibility of the contextual portions of the emails containing coconspirator statements depends on the court's ruling regarding the admissibility of the coconspirator statements themselves, the court reserves ruling on the issue until it rules on the admissibility of the coconspirator statements.

## B. Jury Instructions

Following the November 7 and 8, 2007 pretrial conference, the court ordered the parties to meet and confer and revise the following instructions:

- Govt. 2, Individual and Corporate Plea Agreements
- Govt. 4, Pricefixing Per Se Illegal
- Govt. 6, Knowingly Defined
- Def. 12, Statute of Limitations- Conspiracy

Additionally, the court took under submission the government's proffered instruction no. 8, Deliberate Ignorance, and requested the government to provide the defendant and the court with the authority supporting its proffered instruction no. 5, Sherman Act Mens Rea.

The parties have met and conferred, and have agreed to the following supplemental joint instructions, which the court finds appropriate.

- Joint Instr. 15, Summary of ITC Proceedings
- Joint Instr. 16, Consideration of Individual and Corporate Guilty Pleas and Amnesty Agreement (prior to attack on credibility), and 19, Testimony of Witness involving Special Circumstances - Plea Agreements, Corporate

Leniency (after attack on credibility) - in lieu of Govt. 2;

- Joint Instr. 17, Pricefixing - in lieu of Govt. 4
- Joint Instr. 18, To Act Knowingly - in lieu of Govt. 6

Additionally, defendant has withdrawn Def. 12, Statute of Limitations- Conspiracy; and the government has withdrawn Govt. 5, Sherman Act Mens Rea.

Having considered the parties' papers and the relevant authorities, the court DECLINES to give Govt. 8, Deliberate Ignorance.

The court also DECLINES defendant's latest request to modify Govt. 1, Presumption of Innocence, to include language defining pricefixing. However, as stated on the record, the court will give a *separate* preliminary pricefixing instruction proposed by Swanson, and will also allow the government to submit a similar type of preliminary instruction.

Finally, the parties are ORDERED to meet and confer regarding a limiting instruction pertaining to pre-April 1999 evidence, and to provide the court with a copy of the joint instruction **no later than Monday, January 28, 2008.**

## C. Verdict Form

The court will utilize the verdict form submitted by the government UNLESS, following the close of evidence, the court concludes that a multiple conspiracy instruction is appropriate. If the court gives a multiple conspiracy instruction, then it may utilize defendant's verdict form.

## D. Sealing Request

The court GRANTS the government's motion to seal the supplemental coconspirator filings.

**IT IS SO ORDERED.**

Dated: January 22, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge